IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>EARL W. SHIELDS,<br>  Debtor. | Chapter 7<br>No: 10-00943 |
| ROBERT CASHEN,<br>  Plaintiff, | Honorable John H. Squires<br>United States Bankruptcy Judge |
| v. | Adversary No: |
| EARL W. SHIELDS,<br>  Defendant. | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTION TO DISCHARGE

NOW COMES Plaintiff, Robert Cashen, by and through his attorney, Melanie Pennycuff, and as his Complaint to Determine the Dischargeability of a particular debt and as his Objection to the Discharge of the Defendant, Earl W. Shields, alleges:

### NATURE OF THE CASE

1.  This is a complaint objecting to the discharge of a certain debt of the Defendant pursuant to Section 523 of the Bankruptcy Code and objecting to the discharge of the Defendant debtor generally pursuant to Section 727 of the Bankruptcy Code.

## JURISDICTION AND VENUE

2. This is a proceeding related to the Defendant's discharge in a case arising under Title 11 of the United States Code and, as such, this is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(J).

3. This Court has jurisdiction in this matter by virtue of Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois, referring to this Court, pursuant to 28 U.S.C. §157(a), all proceedings arising under Title 11 or arising in or related to a case under Title 11.

4. Venue in this District is proper pursuant to 28 U.S.C. §1409(a), because this proceeding arises in and is related to the Defendant's bankruptcy case, which is pending in this District.

## THE PARTIES

5. Plaintiff, Robert Cashen, is the stepbrother of the Defendant debtor, Earl W. Shields, and is a scheduled creditor in the instant bankruptcy proceeding.

6. Defendant Earl W. Shields is the Petitioner in case number 10-00943, a Chapter 7 bankruptcy case that is pending in this Court and that was filed on January 12, 2010.

## COUNT ONE – FINDING OF NONDISCHARGEABILITY OF A DEBT
### (11 U.S.C. §523(a)(2)(A))

7. Defendant is a former owner and President of Integrated Portfolio Management, ("IPM"), formerly known as First Credit Services Incorporated and also formerly known as Stanley Weinberg & Associates, and which operated as a debt collection agency.

8. IPM is a debtor in a Chapter 7 bankruptcy case also pending before this Court under case number 09-30317.

2

9. Liliana Shields, ex-wife of the Defendant and also a former owner and officer of IPM, is a debtor in a Chapter 7 bankruptcy case pending in this district under case number 09-29878.

10. At some time prior to February 1, 2007, the Defendant and his then-wife requested a loan from the Plaintiff in the amount of five hundred and seventy-five thousand dollars ($575,000).

11. In order to induce the Plaintiff to make the loan, the Defendant informed the Plaintiff that he needed the loan in order to "cover" a short-term cash-flow problem at IPM, then known as First Credit Services, which the Defendant informed the Plaintiff was caused by a simple accounting error and would quickly be resolved and the Plaintiff repaid in full, with interest.

12. The Defendant knew that the statements of fact he made to the Plaintiff to induce the Plaintiff to loan such a substantial amount of money were untrue and the Defendant never intended to repay the Plaintiff nor did he intend to use the funds loaned by the Plaintiff for the purposes he had told the Plaintiff they would be used.

13. On or about February 1, 2007, the Defendant and the Plaintiff agreed that the terms of the loan would be that Plaintiff would loan five hundred and seventy-five thousand dollars to the Defendant and First Credit Services in exchange for repayment of all principal and interest (pursuant to an installment schedule) by October 1, 2007.

14. The Defendant had previously borrowed a much smaller amount of money from the Plaintiff and had re-paid the smaller loan in full.

15. The Defendant assured the Plaintiff that the $575,000 loan would be re-paid in full on or before October 1, 2007, and agreed to the terms contained in a note which the

3

Defendant, after having received the funds from the Plaintiff, failed and refused to sign. (See Exhibit "A" attached hereto and made a part hereof.)

16. To induce the Plaintiff to advance the $575,000 to him, the Defendant assured and led the Plaintiff to believe that the appropriate paperwork to protect the Plaintiff's interests would be drafted and executed by all necessary parties.

17. The Defendant never had any intention of having the appropriate paperwork protecting the Plaintiff's interest drafted and had no intention of executing any paperwork with regard to the substantial loan he was requesting from the Plaintiff and did not intend to re-pay the same.

18. The Plaintiff, relying on the Defendant's history of repaying a smaller loan, his close familial relationship with the Defendant, and justifiably relying upon the representations the Defendant made to him in order to induce him to make the loan, advanced five hundred and seventy-five thousand dollars to the Defendant as a loan.

19. The Defendant and his ex-wife directly benefited from the loan made by the Plaintiff.

20. Upon information and belief, at or about the same time as the Defendant requested the loan from the Plaintiff, the Defendant purchased two new Lamborghini automobiles, one for himself and one for his wife, Liliana Shields.

21. The Defendant, through IPM, made a few small payments on the loan but stopped making any payments on the loan at some point prior to October 1, 2007, and the loan remains unpaid.

22. Section 523(a)(2)(A) provides in pertinent part:

"(a) A discharge under section 727, 1147, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt - ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-false pretenses, a false representation, or actual fraud."

23. By reason of the foregoing, the loan by the Plaintiff to the Defendant was obtained by false pretenses, false representations and/or actual fraud and is an exception to discharge under Section 523 of the United States Bankruptcy Code.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter judgment:

(a) finding that the Defendant's debt to the Plaintiff, in the amount of $575,000, plus accrued interest, attorney fees and costs, be determined not dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code; and,

(b) granting any additional appropriate relief.

## COUNT II – DENIAL OF DISCHARGE UNDER SECTION 727(a)(4)
(False Oaths Or Accounts in Connection with a Chapter 7 Case)

24. The Plaintiff re-alleges and incorporates the allegations of Paragraphs 1 through 23 as fully set forth herein.

25. The Defendant signed his bankruptcy Petition, Schedules and Statement of Financial Affairs under oath and testified at the Section 341 First Meeting of Creditors under oath and penalty of perjury.

26. On his Schedule B, the Defendant states that with regard to interests in partnerships or joint ventures, the Defendant has "None".

5

27. Upon information and belief, the Defendant is a member in ERSK Partners LLC and 801 Springer Drive LLC. Neither LLC interest was disclosed by the Defendant in his bankruptcy Petition, Schedules, or Statement of Financial Affairs.

28. The Defendant knowingly and fraudulently, and in connection with his Chapter 7 bankruptcy case, made a false oath or account when he stated on his Schedule B that he had no interests in any partnerships or joint ventures.

29. In response to Question 2 on the Statement of Financial Affairs, the Defendant states "None" as the amount of income he received other than from employment, trade, profession, or operation of his business during the two years immediately preceding the commencement of this case.

30. Upon information and belief, the Defendant and his ex-wife owned valuable and improved real property in the State of Arizona which they sold to an unknown buyer at a profit of approximately sixty-thousand dollars, ($60,000), in early 2009.

31. Upon information and belief, the Defendant personally received approximately thirty-thousand dollars ($30,000) in March of 2009 from the sale of the Arizona property.

32. Nowhere in his Petition, Schedules or his Statement of Financial Affairs does the Defendant disclose the $30,000 in income he received from the sale of the Arizona property, nor does he disclose the disposition and/or current location of the funds he received from the sale of the Arizona property.

33. The Defendant failed to disclose the transfer of the Arizona property in his response to Question number 10 on the Statement of Financial Affairs which specifically inquires as to any and all property transferred, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either

absolutely or as security within two years immediately preceding the commencement of this case.

34. Upon information and belief, the Defendant and his ex-wife sold a valuable piano to an unknown party for an unknown amount of money which they divided amongst themselves sometime during the two years immediately preceding the commencement of this case.

35. The Defendant failed to disclose the transfer of the piano in response to Question number 10 on the Statement of Financial Affairs which specifically inquires as to any and all property transferred, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case.

36. At the Section 341 First Meeting of Creditors the Trustee asked the Defendant if he owned any Lamborghini automobiles, to which the Defendant responded that he had owned several Lamborghinis. The Defendant further testified that he had recently owned a 2008 Lamborghini that he sold back to the dealer for approximately three-hundred thousand dollars ($300,000).

37. The Defendant failed to disclose the transfer of the 2008 Lamborghini automobile in his Petition and Schedules and failed to disclose the $300,000 income from the sale of the Lamborghini in his Statement of Financial Affairs and further failed to account for the proceeds of the sale anywhere in his Petition and Schedules.

38. The Defendant knowingly and fraudulently, and in connection with his Chapter 7 bankruptcy case, made a false oath or account by failing to list the transfers of the

7

Arizona property, the piano and the Lamborghini automobile in response to Question 10 on his Statement of Financial Affairs.

39. The Defendant knowingly and fraudulently, and in connection with his Chapter 7 bankruptcy case, made a false oath or account by failing to disclose in response to Question 2 on his Statement of Financial Affairs the $30,000 he received from the sale of the Arizona property, the $300,000 he received from the sale of the Lamborghini automobile and whatever amount he received from the sale of the piano.

40. Question 18 of the Statement of Financial Affairs requests the "names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership . . . within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case."

41. Within the six years immediately preceding the commencement of this case, the Defendant was an Officer and owner of IPM, a member of ESRK Partners LLC, and a member of 801 Springer Drive, LLC. The Defendant did not disclose his interests in any of these businesses and/or partnerships in his petition and schedules.

42. The Defendant knowingly and fraudulently, and in connection with his Chapter 7 bankruptcy case, made a false oath or account when he answered "None" in response to Question 18 of the Statement of Financial Affairs.

8

43.     As his response to Question 10 on the Statement of Financial Affairs, the Defendant states "Received tax refund for tax year 2008 on November 6, 2009 in the amount of $77,500.00. Spent on personal matters."

44.     In response to Question 8 on the Statement of Financial Affairs, the Defendant states "None" as his losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case.

45.     At the Section 341 First Meeting of Creditors the Defendant testified under oath that in November of 2009, (approximately two months prior to his filing his bankruptcy case), he disposed of the aforementioned $77,500.00 while gambling at a casino. He further testified that he had no receipts or other documentation of his losses at the casino.

46.     The Defendant knowingly and fraudulently, and in connection with his Chapter 7 bankruptcy case, necessarily made a false oath or account either: 1) when he stated, under oath, on his Statement of Financial Affairs that he had no gambling losses within one year of the commencement of this case; or, 2) when he testified under oath at the Section 341 First Meeting of Creditors that he lost $77,500.00 in November of 2009 while gambling at a casino.

   WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment:

   (a)     denying Defendant's discharge, pursuant to 11 U.S.C. §727(a)(4); and,

   (b)     granting any additional appropriate relief.

## COUNT III – DENIAL OF DISCHARGE UNDER SECTION 727(a)(2)
### (Concealment of Income and Property)

47. The Plaintiff re-alleges and incorporates the allegations of Paragraphs 1 through 46 as fully set forth herein.

48. In 2009, the Defendant had in his possession and control, in addition to the $1668.24 he has disclosed receiving in monthly unemployment compensation payments, the sum of $30,000 from the sale of the Arizona property and the $77,500 income tax refund he received in November of 2009, for a total of at least $107,500 in cash.

49. In response to Question 3 on his Statement of Financial Affairs, the Defendant states that he paid nothing to any creditors in the ninety-days prior to the filing of his bankruptcy case and nothing to any creditors who are insiders during the year preceding the filing of his bankruptcy case.

50. On his Schedule B, the Defendant lists property owned free and clear by the Defendant valued at only $4,300, all of which the Defendant claims as exempt and only $2250 of which is cash in the Defendant's possession or cash on deposit in a checking account at Harris Bank.

51. Upon information and belief, the Defendant had not paid any mortgage payments in many months prior to the filing of his bankruptcy case, nor had he made payments on any of his other secured debts for many months prior to his filing of his bankruptcy case.

52. The Defendant stated in his Statement of Financial Affairs that he had had no losses from fire, theft, gambling or other casualty in the twelve months immediately preceding the filing of his bankruptcy case.

10

53. The Defendant, with intent to hinder, delay, or defraud a creditor or the Chapter 7 trustee, transferred, removed, or concealed either the property he purchased with the $107,500 in cash he had possession and control of in 2009, or the cash itself.

WHEREFORE the Plaintiff respectfully requests that the Court enter judgment:

(a) denying Defendant's discharge, pursuant to 11 U.S.C. §727(a)(2), and,

(b) granting any additional appropriate relief.

## COUNT IV – DENIAL OF DISCHARGE UNDER SECTION 727(a)(5)
### (Failure to Explain Loss of Assets)

54. The Plaintiff re-alleges and incorporates the allegations of Paragraphs 1 through 53 as fully set forth herein.

55. During 2009, the Defendant had in his possession and control at least the sum of $107,500.

56. The Defendant does not disclose in his Petition, Schedules or Statement of Financial Affairs, how he spent or otherwise disposed of the sum of at least $107,500 in the year prior to the filing of his bankruptcy case.

57. At the Section 341 First Meeting of Creditors, the Defendant testified under oath that he had lost the $77,500 tax refund while gambling at a casino but further testified that he had no receipts for any gambling losses or any other documentation of his alleged gambling losses.

58. The Defendant has failed to explain satisfactorily the loss of the sum of at least $107,500 in the year preceding the filing of his bankruptcy case.

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment:

(a)   denying Defendant's discharge, pursuant to 11 U.S.C. §727(a)(5), and,

(b)   granting any additional appropriate relief.

Dated: March 29, 2010                             Respectfully submitted,

                                                  ROBERT CASHEN

                                           By:   _____
                                                  Melanie Pennycuff, Attorney for
                                                  Robert Cashen

Melanie Pennycuff, #21778-73IN
Law Offices of Barry Kreisler, P.C.
3001 W. Armitage Avenue
Chicago, IL 60647
773-394-6400
773-394-6443 (FAX)

# EXHIBIT A

<u>PROMISSORY NOTE</u>

$575,000.00

Jupiter, Florida
February 1, 2007

FOR VALUED RECEIVED, FIRST CREDIT SERVICES INCORPORATED, an Illinois corporation, and Earl Shields, an individual, (collectively, the "MAKER"), promises to pay to the order of Robert Cashen, an individual (the "PAYEE"), or to such other party or parties as the holder of this Note may from time to time designate, the principal sum of FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($575,000.00), together with interest on the unpaid principal balance being paid at the rate of ten percent (10%) per annum, with accrued interest being payable in lawful money of the United States in eight (8) consecutive monthly installments of FOUR THOUSAND, EIGHT HUNDRED, EIGHTY-THREE and 74/100 DOLLARS ($4,883.74) on the first day of each month, commencing on March 1, 2007. The entire accrued and unpaid balance of principal and interest in the amount of $614,069.92 shall be due and payable in full on the earlier of October 1, 2007 or upon demand. There shall be a ten day grace period in connection with the due date of each such installment payment. In the event any payment of principal or interest is not paid within ten (10) days after it is due, then the Maker shall pay a late charge in an amount equal to five percent (5%) of the overdue payment.

<u>Additional Provisions</u>

1. <u>Consideration</u>. This Promissory Note, being duly authorized and approved by all necessary corporate action of MAKER, evidences the receipt of money's worth by MAKER as the original principal amount of this Promissory Note which represents a business loan for operations of the business located at 800 Springer Drive, Lombard, IL 60148, and including a subordinated Security Agreement and UCC-1 Financing Statements of even date herewith given by MAKER to PAYEE, encumbering the above business, property and assets of MAKER as described therein. Earl Shields joined individually in the execution of this Promissory Note as inducement to the Payee to make the loan evidenced herein and but for the joinder of Earl Shields, PAYEE would not make the loan.

2. <u>Pre-Payment</u>. This Promissory Note may be prepaid, in full or in part at any time without premium or penalty.

3. <u>Usury</u>. In no event shall MAKER pay or PAYEE accept or charge any interest which, together with any other charges upon the principal or any portion thereof, howsoever computed, shall exceed the maximum lawful rate of interest allowable under the laws of the State of Florida from time to time. Should any provision of this Promissory Note or any other agreements between MAKER and PAYEE be construed to require the payment of interest which, together with any other charges upon the principal or any portion thereof, shall exceed the maximum lawful rate of interest, then any such excess shall be applied against the remaining principal balance or returned to MAKER at the option of PAYEE.

4. <u>Place of Payment</u>. Both principal and interest are payable to PAYEE or its designee at 1701 SE Cypress Park Lane, Jupiter, Florida 33478, or at such other place as the holder hereof may, from time to time, designate in writing.

5. <u>Default; Remedies</u>. In the event of a default by MAKER in any payment of principal or interest when and as the same shall become due and payable, or in the event of a default by MAKER of any other term or condition hereunder, or under the Security Agreement,

which such default continues uncured for thirty (30) days from the date of default, PAYEE may, at its option, accelerate maturity and the unpaid principal balance hereof and all accrued interest shall thereupon become immediately due and payable without additional demand or notice. Failure to exercise this option with respect to any failure or breach by MAKER shall not constitute a waiver of the right as to any subsequent failure or breach.

6. **Waivers; Notice.** MAKER, and all other parties liable for the payment of any sum or sums due or to become due under the terms of this Promissory Note, waive presentment, protest and demand and notice of protest, demand and dishonor, and non-payment of this Promissory Note, without notice, to deal in any way at any time with any party hereto, or to grant any extension or extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this Promissory Note without in any way affecting the liability of any other party for the payment of this Promissory Note.

7. **Costs and Expenses.** MAKER agrees to pay (a) all costs of collection, including necessary and reasonable attorneys' fees and all court costs and related expenses (inclusive of any appellate and post judgment proceedings) in case the principal of this Promissory Note or any interest thereon is not paid on the respective installment due date or at maturity thereof, as applicable, whether suit be brought or not, and (b) the cost of all applicable intangible taxes and documentary stamp taxes which shall be promptly affixed to this Promissory Note or other applicable instrument.

8. **Security.** This Promissory Note is secured by the Security Agreement and UCC-1 Financing Statements. A default by MAKER under the Security Agreement, shall also constitute a default under this Promissory Note, and vice versa, in which event PAYEE may declare all indebtedness of principal and interest hereunder forthwith to be immediately due and payable without notice or demand, and may take such actions as PAYEE deems appropriate under this Promissory Note, the Financing Statements, or the Security Agreement with such actions being taken on a cumulative non-exclusive basis; and any failure to exercise any particular option or action at any time with respect to this Promissory Note or such documents shall not constitute a waiver of the right as to any subsequent actions hereunder or thereunder.

9. **Default Interest Rate.** If the principal and interest due herein is not timely paid when due and/or from and after the maturity of this Promissory Note or as a result of a declaration of maturity made by the holder hereof, the entire principal remaining unpaid hereunder, shall bear interest at the highest interest rate then permitted under the laws of the State of Florida (the "Default Interest Rate") with the Default Interest Rate being applied from the date of such default.

10. **Amendments and Modifications.** This Promissory Note may not be amended or modified, nor shall any revision hereof be effected, except by an instrument in writing expressing such intention executed by PAYEE and directed to the MAKER.

11. **Due on Sale or Transfer.** In the event the assets purchased by MAKER from PAYEE including the business as a going concern are sold, transferred or assigned by MAKER during the term of this Note, then the entire amount of principal and interest then owing, at the option of the PAYEE, shall be immediately due and payable.

12. **Choice of Law and Venue.** This Promissory Note shall be governed as to

2

validity, interpretation, construction, effect and all other aspects of the laws of the State of Florida without regard to any conflict of law principles. Venue for any litigation hereunder shall be the courts in Martin County, Florida.

13. <u>Severability</u>. Any provision of this Promissory Note which is unenforceable or contrary to state law, the inclusion of which would affect the validity, legality or enforcement of this Promissory Note, such provision shall be of no effect, and in such case, all the remaining terms and provisions of this Promissory Note shall be fully effected, the same as though no such invalid provision had ever been included in this Promissory Note.

14. <u>Corporate Action</u>. MAKER is in good standing under the laws of the State of Illinois, and MAKER is able to enter into this Promissory Note and perform hereunder. This Promissory Note constitutes a valid, binding and unrestricted obligation of MAKER and has been approved by all necessary corporate action.

15. <u>Miscellaneous</u>. The headings hereunder are for convenience and do not interpret this Promissory Note. The singular shall include the plural, and vice versa.

IN WITNESS WHEREOF, MAKER has executed this Promissory Note and delivered this Promissory Note to PAYEE in Martin County, Florida, this 1st day of February, 2007.

[MAKER]

FIRST CREDIT SERVICE INCORPORATED,
An Illinois corporation

By: _____
    Earl Shields, its President


_____
Earl Shields, Individually

3